OPINION
 

 SENTER, Chief Judge.
 

 This cause is presently before the court upon defendant’s motion for summary judgment. Plaintiff has charged that defendant discriminated against her in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act when it terminated her employment.
 

 FACTS
 

 From 1991 until November 26, 1994, Regina Anne Howard Williams tended to the needs of home bound patients in her capacity as a home health aide for Baldwyn Home Health Care, a division of North Mississippi Medical Center. Howard visited patients in Baldwyn, Ripley, Walnut, New Albany, Gun-town, and Tupelo to perform her duties which included bathing patients, administering medication, light housekeeping, cooking, and changing bandages. Howard, employed by Baldwyn Hospital since 1973, had been a ward secretary prior to becoming a home health aide. Additionally, she completed a secretarial science program upon earning her General Equivalence Degree in 1972.
 

 On March 18,1994, Howard took a medical leave of absence from work because of health problems associated with allergies, equilibrium problems, and severe migraine headaches. During her medical leave, Howard underwent a variety of testing as well as surgery to remove polyps in the sinus cavity. In September of 1994, Peggy McGee, Howard’s supervisor, asked Howard to return to work. Howard said she could not be released to return to work if she had to be “out on the road” and that the only way her treating physician would allow her to return would be to an office position.
 

 In late October, Howard submitted two letters by health care providers regarding her illness and return to work. Her treating physician, Dr. Aram S. Hanissian, wrote, “This lady has immune problems and allergies. She needs to stay in the clinic or hospital and not go on call.” Mary Ruth Botts, a family nurse practitioner, submitted the second letter listing equilibrium problems and allergies as the basis for Howard’s inability to continue in her job. After receiving the letters and in accordance with company policy, Rosalyn Jenkins, an employment counselor with North Mississippi Medical Center, advised Howard that she had thirty (30) days to find another position within North Mississippi Medical Center to which she could transfer or she would face termination.
 

 The Medical Center has a policy of a forty-eight hour advance notification of available positions to employees. The positions are listed on schedules which are posted at the hospital’s various locations. In her job duties as an employment counselor, Jenkins assists such employees who seek transfers to other positions within the organization. Part of her duties include determining whether an
 
 *507
 
 employee has the minimal qualifications for the position to which he or she requests a transfer. Medical Center employees are allowed to submit only four job transfer request forms per year.
 

 The Medical Center allowed Howard to complete eight transfer request forms, although this exceeded the allowable annual limit. The positions to which Howard desired transfer were home care record clerk, patient representative, system control officer, pharmacy technician, residency coordinator/secretary, secretary/technician, secretary/receptionist/clerk, and support secretary. Because Jenkins determined that Howard did not meet the minimal qualifications for residency coordinator/secretary and support secretary, Howard interviewed for only six of the positions. Howard was not hired for any of the positions she sought. On November 26,1994, her employment with the Medical Center was terminated. The Medical Center had no complaints regarding Howard’s job performance.
 

 DISCUSSION
 

 Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). An issue is “genuine” when the nonmoving party comes forward with evidence sufficient to enable the trier of fact to find in his favor on the issue.
 
 Id.
 
 at 248, 106 S.Ct. at 2510. “This showing requires more than ‘some metaphysical doubt as to the material facts.’”
 
 Johnston v. City of Houston,
 
 14 F.3d 1056, 1060 (5th Cir.1994) (quoting
 
 Matsushita Elec. Indus. Co. v. Zenith Radio,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In some circumstances the factual context may render the nonmoving party’s claim implausible, and the nonmoving party must come forward with “more persuasive evidence” to support the claim “than would otherwise be necessary.”
 
 Matsushita,
 
 475 U.S. at 587, 106 S.Ct. at 1356. If the non-moving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this analysis, the court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party.
 
 Crescent Towing v. M/V Anax,
 
 40 F.3d 741, 743 (5th Cir.1994).
 

 AMERICANS WITH DISABILITIES ACT
 

 The Americans with Disabilities Act prohibits discrimination “against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a). The ADA is not an affirmative action program designed to give priority in hiring or reassignment over those who are not disabled.
 
 Daugherty v. City of El Paso,
 
 56 F.3d 695, 700 (5th Cir.1995),
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). Instead, the purpose of the Act is to ensure that individuals with disabilities be given the same consideration for employment as individuals without disabilities. 29 C.F.R. Pt. 1630.1(a), App. Howard alleges she suffered discriminatory treatment based on disability when she was dismissed from her position as a home health aide and when she was not transferred into another position with North Mississippi Medical Center.
 

 As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that she has a disability.
 
 Rogers v. International Marine Terminals, Inc.,
 
 87 F.3d 755, 758 (5th Cir.1996). The Medical Center argues first that Howard is estopped from claiming a disability “because plaintiff has clearly denied, both in this action and elsewhere, she has any disability.” The Medical Center argues that plaintiff testified under oath in her deposition that she was not disabled, that plaintiff checked the “no” box in response to the question “Are you dis
 
 *508
 
 abled?” on a claim form with the Mississippi Employment Security Commission, and that on an application for employment with a subsequent employer the plaintiff answered “no” to a question concerning physical defects. The Medical Center bases its argument on a line of cases in which plaintiffs suing under the ADA who have claimed total disability are estopped from subsequently claiming they can perform the essential functions of their job, a necessary determination in whether an individual is qualified to do the job. In
 
 Pegues v. Emerson Electric Co.,
 
 913 F.Supp. 976 (ND.Miss.1996), this court had occasion to address this issue, saying:
 

 Although the court does not believe that a finding of disability by the Workers’ Compensation Commission or the Social Security Administration necessarily forecloses an ADA claim, it is the substance of Pegues’ and Crocker’s testimony and representations in those proceedings and the subsequent findings by both administrative bodies which trouble this court and pose the greatest hurdle for Pegues. On the one hand, Pegues represented in the administrative proceedings that she cannot work, and those representations were accepted and disability benefits,
 
 based on an inability to work,
 
 were awarded.
 

 Id.
 
 at 980-81. Clearly, the logic justifying estoppel in
 
 Pegues
 
 is not applicable to the case at bar. Pegues was simply estopped from claiming she can work while accepting payment from the state because she cannot work. By contrast, Howard did not stand to gain pecuniary benefit from the state of Mississippi when she responded “no” to a question regarding disability on a claim form with the Employment Security Commission. There was no administrative determination or investigation by an administrative agency that Howard indeed was
 
 not
 
 disabled.
 

 Finally, despite defendant’s assertion to the contrary, “disability” as applied under the ADA is very much a term of art.
 
 See
 
 29 C.F.R. Pt. 1630.2(g), App. In addition to taking Howard’s deposition testimony out of context, the Medical Center, as the plaintiff so deftly points out, is “attempting to tie a layperson down on a legal definition.” This court does not find that Howard is estopped from claiming she is disabled under the ADA through any alleged admissions.
 

 The ADA defines a disability as (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or, (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Howard claims both a disability and perception of disability.
 

 To determine the existence of a disability, the inquiry depends upon whether Howard had a physical or mental impairment and, if so, whether it substantially limited one or more of her major life activities.
 
 Rogers v. International Marine Terminals, Inc.,
 
 87 F.3d 755, 758 Because the Medical Center has not persuasively argued that Howard had no impairment, it will be assumed for purposes of this summary judgment motion only that Howard suffered an impairment.
 
 [1]
 
 Instead, the dispute centers around whether Howard’s allergies, migraine headaches, and equilibrium problems substantially limited her major life activities.
 
 [2]
 

 
 *509
 
 For purposes of the ADA, substantially limits means:
 

 (1) unable to' perform a major life activity that the average person in the general population can perform; or
 

 (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.
 

 29 C.F.R. § 1680.2(jX1). “Major life activities” is defined as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i).
 

 Howard’s impairments are allergies, vertigo, and migraine headaches. Howard offers no argument that the allergies and vertigo affected any other major life activity outside of working.
 
 [3]
 
 On the other hand, Howard maintains that the migraines not only affected the major life activity of working, the migraines affected all major life activities. Howard claims she cannot perform any major life activities at the onset of a migraine because she must go to bed. These migraines last anywhere from two days to two months.
 

 With regard to whether an individual is substantially limited in the major life activity of working, the individual must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
 
 Id.; Dutcher v. Ingalls Shipbuilding,
 
 53 F.3d 723, 726.
 

 As a home health aide, Howard was required to drive to the patient’s homes where she tended to their needs. These patients are incapacitated, home-bound people who are necessarily dependent upon health care providers. Often, the patients live alone and require the physical assistance of a home health aide to accomplish even the simplest of tasks, such as bathing. At the onset of vertigo, Howard becomes dizzy and lightheaded. The migraines cause her vision to blur. Certainly, Howard advances a strong argument in stating that her own illnesses could adversely impact the very people she was hired to help. However, while Howard has adequately shown that she was substantially limited in her ability to perform the particular job of home health aide, she has not demonstrated or even attempted to show that she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs. 29 C.F.R. § 1630.2(j)(3)(i).
 
 See Bridges v. City of Bossier,
 
 92 F.3d 329 (5th Cir.1996) (holding that one who is disqualified from holding a narrow range of jobs is not substantially limited in the major life activity of working and, therefore, not disabled under the ADA). Howard has not established that her allergies and vertigo substantially limited her major life activity of working.
 

 While Howard can successfully argue that her migraine headaches substantially limited all of her major life activities including working, it is, nonetheless, a losing argument. Should the court agree with Howard that being confined to one’s bed at the onset of a migraine headache is, indeed, substantially limiting, the court would be obligated to find that the confinement renders Howard not a qualified individual under the Act. An individual who is disabled must be able to perform the essential functions of her job to receive the protection afforded by the ADA Attendance at work is an essential function of all jobs.
 
 Tyndall v. National Educ. Centers,
 
 31 F.3d 209, 213 (4th Cir.1994);
 
 Jackson v. Veterans Admin.,
 
 22 F.3d 277, 278-79 (11th Cir.1994),
 
 cert. denied,
 
 — U.S.-, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994);
 
 Barfield v. Bell South Telecommunications,
 
 886 F.Supp. 1321, 1325 (S.D.Miss.1995).
 

 In the alternative, Howard argues that North Mississippi Medical Center perceived
 
 *510
 
 her as disabled. Howard offers only conclusory allegations of perception by her employer. Howard would have the court transform the notification provided by Howard to the Medical Center to effect her medical leave into evidence that the Medical Center regarded her as disabled. Howard believes that by following company policy of allowing Howard thirty-days to effect a transfer, the Medical Center was somehow acting on a perception of disability. Furthermore, Howard describes the opportunity to transfer to a different job as a “symbolic opportunity.” The court is little persuaded by these arguments. Even if the arguments were factually and legally sound, and they are not, they offer less than “metaphysical doubt as to material facts” which is clearly not enough to defeat a summary judgment motion.
 
 Johnston v. City of Houston, 14 F.3d
 
 1056, 1060. Howard has offered no evidence that the Medical Center regarded her as disabled.
 

 Because she has not shown an impairment which substantially limits a major life activity, Howard cannot establish a disability under the ADA. Even assuming, however, that Howard met the ADA definition of disabled, she could not establish an ADA violation. In regard to her dismissal as a health care provider, Howard was not qualified to do the job. Quite simply, she disqualified herself. It would be more than a little difficult for the court to interpret her dismissal as an adverse employment decision when Howard herself stated she could no longer do the job.
 

 Howard also argues that she suffered discrimination when the Medical Center did not reasonably accommodate her by placing her into one of the requested transfer positions. While employers do have an obligation under the ADA to reasonably accommodate disabled persons, the employer is not required to find or create a new job for the disabled.
 
 Daugherty v. City of El Paso,
 
 56 F.3d 695, 699. The Medical Center followed its policy of allowing thirty days to effect a transfer and, further, exceeded company policy by allowing Howard to file eight transfer request forms. Howard claims she was qualified for the positions, including the two in which she was denied interviews. The Medical Center argues that “more” qualified individuals were hired into the positions. Howard has offered no evidence to refute the Medical Center’s claim. In fact, Howard does not even know who was hired in these positions. Therefore, even if Howard could successfully establish a disability under ADA, it would be to no avail.
 

 THE REHABILITATION ACT
 

 The Rehabilitation Act, 29 U.S.C. §§ 701-797, prohibits discrimination against individuals with disabilities in programs receiving federal financial assistance. It was the intention of Congress that relevant case law developed under the Rehabilitation Act be generally applicable to the term “disability” as used in the ADA. 29 C.F.R. Pt. 1630.2(g);
 
 See Dutcher v. Ingalls Shipbuilding, 53
 
 F.3d 723, 727 n. 14 (5th Cir.1995). For the reasons stated above, Howard cannot establish a violation under the Rehabilitation Act. The court therefore finds that North Mississippi Medical Center is entitled to summary judgment as a matter of law.
 

 CONCLUSION
 

 Having carefully considered the evidence and the applicable law, the court is of the opinion that defendant’s motion for summary judgment on plaintiff’s disability discrimination claim is well taken and is granted. A final judgment in accordance with this opinion shall be issued.
 

 FINAL JUDGMENT
 

 In accordance with a memorandum opinion issued concurrently, IT IS ORDERED:
 

 That the defendant’s motion for summary judgment is granted; this cause of action is dismissed with prejudice.
 

 [1]
 

 . The defense included as a contested issue of fact in the pretrial order whether Howard suffered an impairment. Determining whether a physical or mental impairment exists is only the first step in determining whether or not an individual is disabled. Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. An impairment rises to the level of disability if the impairment substantially limits one or more of the . individual's major life activities. The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. 29 C.F.R. Pt. 1630.2(j), App.
 

 [2]
 

 . In recommending assignment to an office position, the treating physician mentioned only “immune and allergy problems.” The nurse practitioner mentioned equilibrium problems and allergies. Neither mentioned the migraine headaches as a basis for reassignment. In construing the facts and inferences in the light most favorable to the nonmovant in accordance with Civil Procedure Rule 56, the court will assume that the migraine headaches and equilibrium problems were manifestations of Howard’s immune and allergy problems.
 

 [3]
 

 . In her deposition, Howard mentions that she cannot climb because of her vertigo. Climbing is not a major life activity in the Fifth Circuit.
 
 Rogers v. International Marine Terminals, Inc.,
 
 87 F.3d 755, 758 n. 2.